IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

THE HARVESTER, INC., d/b/a Commonwealth
Architects,

                                Plaintiff,

               v.                            Civil Action Number 3:09cv358

RULE JOY TRAMMELL + RUBIO, LLC,

                                Defendant.

## MEMORANDUM OPINION
### (Denying Defendant's Motion for Summary Judgment)

This is an action brought under the Copyright Act, 17 U.S.C. § 101, *et seq*. Plaintiff,

Commonwealth Architects ("Commonwealth"), alleges that Defendant, Rule Joy Trammell + Rubio,

LLC ("Rule Joy"), infringed its copyright held in a set of several architectural drawings. The matter

is before the Court on a Motion for Summary Judgment by Rule Joy. Both parties submitted initial

memoranda, and, pursuant to the Court's Order of March 5, 2010, additional memoranda in support

of their respective positions. The Court will dispense with oral argument because the facts and legal

contentions are adequately presented in the materials presently before the Court and argument would

not aid in the decisional process. For the reasons stated herein, Rule Joy's motion is denied.

## I. Introduction

### A. Factual Background

The John Marshall Hotel ("the Hotel"), located in Richmond, Virginia, was designed in 1928

by Marcellus Wright. Over time, various changes and additions were made to the original design

of the Hotel, most notably in 1955, 1962, and 1978. In 2004, John Marshall Residence, LLC ("JM Residence") proposed renovating the Hotel into condominium units and entered into an agreement with Commonwealth to provide architectural services for the project. JM Residence, however, abandoned the project and did not pay Commonwealth for most of its services.[1]

A separate entity, John Marshall Building, LLC ("JM Building"), initiated a new project for the Hotel and contracted with Commonwealth in March 2008 for architectural services to include preparation of as-built documents, schematic design, and design development to adapt the Hotel to apartment living and street level retail space. These services are known as "Phase 1" services. Commonwealth issued design development drawings termed "Instruments of Service" on June 30, 2008 and applied for copyright registration of these drawings on the same day. Commonwealth was issued a copyright registration effective May 4, 2009 for the architectural drawings. The copyright registration indicates that the drawings were registered as "architectural work[s],"[2] and it notes that the "[p]reexisting architectural work" – the existing Hotel, as designed by Marcellus Wright and the subsequent renovating architects – was "[m]aterial excluded" from Commonwealth's copyright, while the "[n]ew and revised architectural work" created by Commonwealth is "included" in Commonwealth's copyright.

———————————————

[1]Commonwealth's dispute with JM Residence and others over unpaid fees for architectural services rendered was the subject of a law suit filed in March 2009 by Commonwealth in Richmond City Circuit Court (Case No. CL09001036-00). The suit settled by an Agreed Order entered on May 1, 2009. Rule Joy was never a party to that suit. JM Residence is not, and never has been, a party to the case at bar.

[2]As Commonwealth's architectural drawings were registered as an "architectural work," the Court and the parties agree that the drawings were registered under 17 U.S.C. § 102(a)(8). The Court and the parties also agree that Commonwealth did *not* register its architectural drawings as "technical drawings" under 17 U.S.C. § 102(a)(5).

Due to unexpected economic conditions in 2008, financing for JM Building's project changed, requiring a reduction in costs for the project to proceed, particularly with respect to "Phase 2" services that would include the creation of construction documents, as well as construction contract administration services. JM Building also became delinquent in certain payments owed to Commonwealth. As a result, Commonwealth refused to negotiate a reduction of its fees and revoked the non-exclusive license to use and reproduce Commonwealth's Instruments of Service that it had allowed JM Building. Accordingly, JM Building did not contract with Commonwealth to provide Phase 2 services; instead, JM Building sought out the services of Rule Joy.

In November 2008, JM Building delivered to Rule Joy the historic drawings of the Hotel from the 1928 original design, as well as drawings from the three major renovations in 1955, 1962, and 1978. In addition to these historic drawings, JM Building delivered Rule Joy the design development drawings issued by Commonwealth.[3] Based on the combination of drawings provided, Rule Joy performed an initial assessment of the proposed project, JM Building's program requirements,[4] and JM Building's budget in order to prepare a proposal for architectural services. Rule Joy's initial proposal to JM Building was for Phase 2 services contingent upon the ability of

---

[3]Rule Joy admits that it did in fact receive Commonwealth's design development documents from JM Building, and, at the request of Commonwealth, Rule Joy and JM Building both returned the documents to Commonwealth in March 2009.

[4]Commonwealth argues that it created what Rule Joy refers to as JM Building's "program." JM Building's "program" is nothing more than JM Building's specifications as to their desired number and type of apartment units and retail space intended for inclusion in Rule Joy's renovation designs. As indicated in the Court's Order of March 5, 2010, the Court, having to draw all reasonable inferences in favor of Commonwealth for the purposes of Rule Joy's summary judgment motion, must assume, as Commonwealth has alleged, that the ideas contained in JM Building's program – to include a certain number of apartment units and a certain-sized retail area – were originally Commonwealth's. Of course, in making this assumption, the Court must also note that "[i]n no case does copyright protection . . . extend to any idea." 17 U.S.C. § 102(b) (West 2010).

Rule Joy to use Commonwealth's design development drawings to prepare construction drawings under a license from Commonwealth. This initial proposal was rejected by JM Building, however, and JM Building advised Rule Joy that it likely could not obtain a license from Commonwealth. Rule Joy then submitted a revised proposal to JM Building that was accepted in an agreement dated December 5, 2008, whereby JM Building retained Rule Joy to provide architectural, interior design, and engineering services for the Hotel project.

The agreement required Rule Joy to create demolition documents, schematic design, design development and construction documents while complying with applicable regulations for historic preservation and building codes. As was Commonwealth, Rule Joy was tasked by JM Building with returning the Hotel to the look and feel of the original 1928 Marcellus Wright design, while also adapting it for the modern use of apartment living and retail services. JM Building specified the number, size and type of apartment units and approximate size of retail space that it wanted Rule Joy to include in its design.[5] JM Building further charged Rule Joy with preparing a design to increase

---

[5]Rule Joy asserts that the U.S. Department of Housing and Urban Development's ("HUD") requirements also demanded a certain number, size and type of apartment units and approximate size of retail space. Commonwealth argues, however, that what Rule Joy refers to as HUD's *requirements* were merely a reflection of HUD's "understanding of the scope of the Project." Pl.'s Mem. in Opp'n. to Mot. for Summ. J. at 8. The letter from HUD attached as Exhibit 7 to Rule Joy's motion for summary judgment suggests that both positions are partially correct, as HUD appears both (1) to confirm "that the project will have [certain previously-enumerated] characteristics" and (2) to require certain "special conditions" that "must be met or resolved to HUD's satisfaction." Def.'s Mot. for Summ. J. Ex. 7 at 2. The portion of the letter related to number and size of apartment units and retail space appears to be more a confirmation of the existing scope of the project, rather than an independent requirement or mandate. Relatedly, Commonwealth also alleges that its designs predated HUD's so-called "requirements," and, for the purposes of Rule Joy's summary judgment motion, the Court must assume as much. Thus, the Court must assume that, while the HUD requirements may have constrained Rule Joy's designs in certain ways, they did not constrain Commonwealth's designs in any way.

the rentable space from that designed by Commonwealth and reduce the construction costs by approximately $3,000,000.00.

JM Building was under a compressed schedule to produce completed drawings in compliance with the financing requirements of HUD and, therefore, demanded an accelerated schedule for Rule Joy to prepare its design documents. Due to the compressed schedule, Rule Joy formed two teams of architects, one to document, measure, record and draw existing conditions at the Hotel, and another to prepare a schematic design for the project. In preparing their own drawings, Rule Joy admits to having occasionally referred back to Commonwealth's drawings (1) as a "benchmark" and (2) to avoid infringing on any of Commonwealth's "protectable design items." To allow for electronic access to Commonwealth's Drawings, Rule Joy commissioned a professional scanning service, Diazo Printing, to scan Commonwealth's architectural drawings into ".PDF" files and then upload the electronic copies to Rule Joy's "File Transfer Protocol" website. After spending some 6,000 hours developing its set of drawings, Rule Joy made its schematic design presentation to JM Building, including the proposed layout of all residential and public spaces, on January 29, 2009.

Rule Joy then produced its design development set of drawings, or first pricing set, on March 4, 2009, a pricing set of drawings on April 1, 2009, demolition and building permit sets on May 15, 2009, an issue for HUD review on June 30, 2009, and an issue for construction on August 24, 2009, in addition to other intermediate issuances. The layout proposed by Rule Joy provides more rental units (238 vs. 232), more rentable apartment space (an additional 5,000 square feet), and more street-front retail square footage than Commonwealth's layout. Rule Joy's design is also estimated by the general contractor to cost approximately $2,000,000.00 less to build than Commonwealth's design.

5

**B. Procedural Background**

Commonwealth filed its initial Complaint on June 5, 2009 naming only Rule Joy as a defendant and seeking damages and injunctive relief under the Copyright Act and the Lanham Act (Docket No. 1). On August 11, 2009, Commonwealth filed a motion for preliminary injunction (Docket No. 9), and on October 9, 2009, JM Building filed a motion to intervene as a defendant (Docket No. 20). The Court held a hearing on these two motions on October 15, 2009 to address concerns over jurisdiction and principles of federalism and comity, and the Court allowed the parties twenty days to make proper amendments to their pleadings. *See* Order of October 16, 2009 (Docket No. 25). On October 29, 2009, Commonwealth filed its Amended Complaint against Rule Joy in which it sought damages and injunctive relief under only the Copyright Act (Docket No. 29). JM Building filed an Amended Motion to Intervene on November 5, 2009 (Docket No. 33), and the Court granted JM Building's amended motion to intervene on November 19, 2009 (Docket No. 38). Rule Joy then filed the instant motion for summary judgment on December 22, 2009 (Docket No. 39). Commonwealth responded (Docket No. 46), and Rule Joy replied (Docket No. 50), but the Court believed additional briefing was necessary and ordered the parties to file supplemental briefs on the relevant legal issues (Docket No. 51). The appropriate supplemental briefs were filed timely (Docket Nos. 57, 58, 64, and 65).

Just prior to the close of the additional briefing period, Commonwealth moved to withdraw its motion for preliminary injunction (Docket No. 61), and the Court granted the withdrawal motion, terminating Commonwealth's motion for preliminary injunction as withdrawn on March 31, 2010 (Docket No. 63). Additionally, Commonwealth voluntarily withdrew both its temporary and final injunction requests by way of an Agreed Order entered April 27, 2010 (Docket No. 75), and JM

Building was dismissed as a defendant from this litigation in a separate Agreed Order also entered on April 27, 2010 (Docket No. 76). Accordingly, all that remains of this suit is Commonwealth's copyright infringement claim against Rule Joy seeking exclusively monetary damages. Rule Joy has moved the Court for summary judgment as to this claim pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking full costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505. This matter, initially before the Honorable United States District Judge Richard L. Williams, but reassigned to the undersigned on April 26, 2010 (Docket No. 74), is ripe for decision following the undersigned's review and consideration of the parties' filings and the hearing of oral argument.

## II. Standard of Review

When evaluating a motion for summary judgment under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party . . . ." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). A court will grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc .*, 477 U.S. 242, 248 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary

judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Analysis

"[T]he Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in five qualified ways," namely, (1) to reproduce the work, (2) to prepare derivative works, (3) to distribute copies of the work to the public, (4) to perform the work publicly, and (5) to display the work publicly. *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 432-33 (1984) (citing 17 U.S.C. § 106). The Act further provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. § 501. In its Amended Complaint, Commonwealth alleges that Rule Joy infringed a copyright Commonwealth holds in its Instruments of Service (hereinafter "the Architectural Drawings"). Specifically, Commonwealth alleges that Rule Joy (1) made wholesale copies of the Architectural Drawings by scanning them into ".PDF" files[6] and (2) incorporated particular protected aspects of the Architectural Drawings into Rule Joy's own architectural drawings prepared for JM Building. "In order to prove copyright infringement, a plaintiff must show that it owns a valid copyright, and

---

[6]Commonwealth alleged in its Amended Complaint that, "[u]sing originals . . . of C[ommonwealth's Architectural Drawings], R[ule Joy] infringed on C[ommonwealth]'s copyright by copying C[ommonwealth]'s protected designs rendered for the Project . . . ." Pl.'s Amended Compl. ¶ 24. While the Amended Complaint does not specify that the unauthorized copying of Commonwealth's originals occurred when Rule Joy had Commonwealth's Architectural Drawings scanned and converted into electronic ".PDF" files, Commonwealth ultimately made this clarification in subsequent filings with the Court. *See* Pl.'s Resp. to Add'l Br. Order at 19. Commonwealth's allegation in its Amended Complaint that Rule Joy used originals of Commonwealth's drawings and infringed on Commonwealth's copyright by copying Commonwealth's designs is broad enough to include the ultimate allegation, as fleshed out more specifically after discovery, that Rule Joy used originals of Commonwealth's drawings and infringed on Commonwealth's copyright by copying the designs with an electronic scanner.

it must establish that the defendant engaged in unauthorized copying of the work protected by the copyright." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002) (citing *Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996)). In its motion for summary judgment and supporting memoranda, Rule Joy argues that (1) Commonwealth does not own any valid copyright in the Architectural Drawings and (2) Rule Joy did not copy any protected elements of Commonwealth's Architectural Drawings.

### A. Commonwealth Owns a Thin, but Valid, Copyright

#### (1) Registration's Burden-Shifting Effect

The plaintiff in a copyright infringement action bears the initial burden of proving ownership of a valid copyright. *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999). "In order to meet this burden, the plaintiff must show that the work is original and that the applicable statutory formalities were followed." *Id.* (citing *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)); *see also Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995). In judicial proceedings, however, a certificate of copyright registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also Bateman, supra*, 79 F.3d at 1541; *Lotus Dev. Corp., supra*, 49 F.3d at 813; *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990). Nevertheless, "[t]he presumption flowing from § 410(c) is not an insurmountable one, and merely shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 (3d Cir. 1990) (citing *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985)); *see also*

*Silver Ring Splint Co. v. Digisplint, Inc.*, 543 F. Supp. 2d 509, 513 (W.D. Va. 2008) (citing *Serv. & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 688 (4th Cir. 1992)). "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright." *Masquerade Novelty, supra*, 912 F.2d at 668. "Where, for example, the issue is whether the copyrighted article is 'original,' the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality." *Id.* at 668-69 (citing M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 12.11[A], at 12-83-85 (1990)). On the other hand, where "the issue is whether particular articles with certain undisputed characteristics are copyrightable, the defendant need not introduce evidence but instead must show that the Copyright Office erroneously applied the copyright laws in registering plaintiff's articles." *Id.* at 669 (citing *Williams Elecs. v. Artic Int'l, Inc.*, 685 F.2d 870, 871-72 (3d Cir. 1982)). Thus, as Commonwealth received a proper certificate of copyright registration for the Architectural Drawings, it benefits from the rebuttable presumption that the copyright is valid, and the burden shifts to Rule Joy, who is required to demonstrate that "the work in which copyright is claimed is unprotectable (for lack of originality) or, more specifically, to prove that . . . the copyrighted work actually taken is unworthy of copyright protection." *Montgomery, supra*, 168 F.3d at 1289 (quoting *Bateman, supra*, 79 F.3d at 1541). Rule Joy argues that Commonwealth's Architectural Drawings are unworthy of copyright protection because (1) the Architectural Drawings are not sufficiently original to warrant copyright protection, and (2) the Architectural Drawings fail to meet the statutory definition of "architectural work."[7]

---

[7]Rule Joy also argues that its own drawings were independently created, not copied from Commonwealth's drawings. This argument is relevant only for purposes of determining whether Rule Joy unlawfully incorporated protected elements of Commonwealth's design into Rule Joy's own

### (2) Copyright Protection Generally

"Copyright protection subsists . . . in *original works of authorship* fixed in any tangible medium of expression . . . ." 17 U.S.C. § 102(a) (emphasis added). A work is "original" when it "possesses at least some minimal degree of creativity" and was "independently created by the author (as opposed to copied from other works)." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 346 (1991). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* (quoting 1 *Nimmer on Copyright* § 1.08[C][1] (1990)). Indeed, "[o]riginality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.*

Protected "works of authorship" include, among other things, "pictorial, graphic, and sculptural works" under 17 U.S.C. § 102(a)(5), as well as "architectural works" under 17 U.S.C. § 102(a)(8). "Pictorial, graphic, and sculptural works" under § 102(a)(5) include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and *technical drawings, including architectural plans*." 17 U.S.C. § 101 (emphasis added). These types of works receive copyright protection "insofar as their form but not their mechanical or utilitarian aspects." *Id.* An "architectural work" under § 102(a)(8), on the other hand, is "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." *Id.*

---

architectural drawings. As explained in more detail herein, the Court need not reach this issue, so the Court will not address Rule Joy's independent creation argument.

Such a work "includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id.*

It is well-settled that architectural drawings receive copyright protection under both 17 U.S.C. § 102(a)(5) and § 102(a)(8). *See Leicester v. Warner Bros.*, 232 F.3d 1212, 1219 (9th Cir. 2000); *Attia v. Soc'y of N.Y. Hosp.*, 201 F.3d 50, 52 n.3 (2d Cir. 1999); *Morgan v. Hawthorne Homes, Inc.*, No. 04-1809, 2009 WL 1010476, at *13 (W.D. Pa. April 14, 2009); *see also* H.R. Rep. No. 101-735, at 17 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6950 ("An individual creating an architectural work by depicting that work in plans or drawing[s] will have two separate copyrights, one in the architectural work (section 102(a)(8)), the other in the plans or drawings (section 102(a)(5))."). However, "[r]egistration is a prerequisite for a copyright infringement action." *Darden v. Peters*, 488 F.3d 277, 285 n.1 (4th Cir. 2007); *see also* 17 U.S.C. § 411(a). Therefore, as Commonwealth only registered its work as an "architectural work" under § 102(a)(8), in the instant action, Commonwealth cannot seek to recover for any alleged infringement of any copyright it may own in its Architectural Drawings as "technical drawings" under § 102(a)(5). Accordingly, the Court will address only the question of whether Commonwealth owns a valid copyright in its Architectural Drawings as "architectural works" under § 102(a)(8).

### (3) Copyright Protection in "Architectural Works"

The Fourth Circuit does not appear ever to have analyzed squarely the copyright interest held in architectural drawings as "architectural works" under § 102(a)(8).[8] The best-reasoned sister

---

[8] Judge Williams discussed in detail the five known Fourth Circuit cases to have even tangentially touched on "architectural works" under § 102(a)(8) in his Order of March 5, 2010, and the parties agree that the Fourth Circuit's treatment of the copyright interests at stake in those cases is not directly controlling on the issues in the case at bar. The cases compiled and analyzed in the March 5, 2010 Order were: *Nelson-Salabes, supra*, 284 F.3d 505, *Ale House Mgmt., Inc. v. Raleigh*

circuit to have done so is the Eleventh Circuit in *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008),[9] and the Court adopts the Eleventh Circuit's reasoning and analysis as detailed herein.[10]

---

*Ale House, Inc.*, 205 F.3d 137 (4th Cir. 2000), *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532 (4th Cir. 2007), *Bonner v. Dawson*, 404 F.3d 290 (4th Cir. 2005), and *Richmond Homes Mgmt., Inc. v. Raintree, Inc.*, 66 F.3d 316 table op. (4th Cir. 1995).

[9]Rule Joy has championed *Intervest* as persuasive authority since the filing of its motion for summary judgment on December 22, 2009. Def.'s Mem. in Supp. of Mot. for Summ. J. at 17. Commonwealth ultimately conceded in its response to the Court's Order of March 5, 2010 for additional briefing that "*Intervest* is persuasive authority . . . ." Pl.'s Resp. to Add'l Br. Order at 4. In *Intervest*, the Eleventh Circuit examined the "architectural works" copyright interest held in two different home floor-plans under § 102(a)(8). *Intervest*, *supra*, 554 F.3d at 916. Both floor-plans "depict[ed] a four-bedroom house, with one bedroom being denominated as a 'master' bedroom or suite" and "include[d] a: two-car garage; living room; dining room; 'family' room; foyer; 'master' bathroom; kitchen; second bathroom; nook; and porch/patio." *Id.* Both floor-plans also "reflect[ed] certain 'elements' common to most houses: doors; windows; walls; bathroom fixtures (toilet, tub, shower, and sink); kitchen fixtures (sink, counter, refrigerator, stovetop, and pantry/cabinets); utility rooms and fixtures (washer, dryer, and sink); and closets." *Id.* The two floor-plans were also approximately equivalent in square footage. *Id.* Despite these general similarities, the Eleventh Circuit upheld the district court's granting of summary judgment to the alleged infringer defendant because, "[a]t the level of protected expression, the differences between the designs [we]re so significant that no reasonable, properly instructed jury could find the works substantially similar." *Id.* at 921.

[10]The Court notes that the Eleventh Circuit's approach, though not articulated precisely as such, comports with the analysis envisioned by Congress and adopted by the Middle District of Tennessee wherein the Court "determine[s] whether there are original design elements present, including overall shape and interior architecture," and then "examine[s] whether the design elements are functionally required." *Frank Betz Assocs., Inc. v. Signature Homes, Inc.*, No. 3:06-0911, 2010 WL 1373268, slip op. at 3 (M.D. Tenn. April 6, 2010) (citing H.R. Rep. No. 101-735, *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6951). The two-step Congressional and *Frank Betz* approach does nothing more than stress that functionally-required design components do not receive copyright protection, while "[n]on-functionally[-]required elements will be protected without considering physical or conceptual separability," as would be required under § 102(a)(5). *Id.* The Court will consider these same issues under the Eleventh Circuit's approach, just not in the same strict two-step structure, as the originality inquiry is in large part intertwined with the functionality inquiry such that a rigid two-step approach, in many architectural works cases, including the case at bar, would effectively require the unnecessary adoption and application of a legal fiction. In other words, analyzing and considering thoroughly the originality of a design choice will often require the

As the Architectural Drawings before the Court deal with a specific type of copyright – that of an "architectural work" – the Court's analysis "begin[s] by examining the statutory definition of an 'architectural work,' to wit: 'the design of a building as embodied in any tangible medium of expression, including a building, architectural plans or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.'" *Intervest, supra,* 554 F.3d at 919 (quoting 17 U.S.C. § 101 (2008)). A review of the relevant legislative history "discloses that such 'individual standard features' include 'common windows, doors, and other staple building components.'" *Id.* (quoting H.R. Rep. No. 101-735, *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6949). In addition to individual standard features, "'[s]tandard configurations of spaces' . . . are not copyrightable[.]" *Zitz v. Pereira,* 119 F. Supp. 2d 133, 147 (E.D.N.Y. 1999) (quoting 37 C.F.R. § 202.11(d)(2)). Congress' decision to include in the definition of "architectural work" the phrase "'the arrangement and composition of spaces and elements in the design' demonstrates Congress' appreciation that 'creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole.'" *Intervest, supra,* 554 F.3d at 919 (quoting H.R. Rep. No. 101-735, *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6949). Thus, "while individual standard features and architectural elements classifiable as ideas or concepts are not themselves copyrightable, an architect's original combination or arrangement of such elements may be." *Id.* (citing *Corwin v. Walt Disney Co.,* 475 F.3d 1239, 1251 (11th Cir. 2007)).

---

simultaneous consideration of whether that design choice was made out of functional necessity, particularly where there were only a limited number of ways to express the design choice due to the relevant functional requirements.

Therefore, "the definition of an architectural work closely parallels that of a 'compilation' under the statute, that is: '[A] work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.'" *Id.* (quoting 17 U.S.C. § 101). The Supreme Court has "indicated that the compiler's choices as to selection coordination, or arrangement are the only portions of a compilation, or here, architectural work, that are even entitled to copyright protection." *Id.* (citing *Feist, supra*, 499 U.S. at 348); *see also Darden, supra*, 488 F.3d at 288 ("Compilation authorship is limited to the *original* selection, coordination and arrangement of the elements or data contained within a work."). Thus, the "protected expression" in an architectural work is "the arrangement and coordination" of the individually unprotected "common elements ('selected' by the market place, i.e., rooms, windows, doors, and 'other staple building components')." *Intervest, supra*, 554 F.3d at 919. As such, the copyright protection in architectural works, as with traditional compilations, is necessarily "thin." *Id.* (citing *Feist, supra*, 499 U.S. at 349).

However, as with all protected expression, the protection afforded to an architectural work "is subject to an important limitation[:] . . . copyright protection may extend only to those components of a work that are original to the author." *Id.* at 919 n.2 (quoting *Feist* at 348). This originality limitation complicates matters in the instant case significantly, as a number of factors to be detailed herein operate to constrain in some way Commonwealth's opportunities for originality in its Architectural Drawings. An important preliminary component of this originality inquiry is the fact that the Architectural Drawings are not plainly an "architectural work," but are also properly considered a derivative work under the Copyright Act.

**(4) Copyright Protection in Derivative Works**

A "derivative work" is "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Also, "[a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" *Id.* The copyright in a derivative work "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." *Id.* § 103(b). Of course, the material contributed by the author of the derivative work must be sufficiently *original* to receive copyright protection. *See M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 438 (4th Cir. 1986). "[T]he standard for originality of a . . . derivative work is 'minimal' and of 'a low threshold,' and is 'modest at best.'" *Id.* (internal citations omitted). The originality requirement is satisfied "if the new material or expression has . . . a faint trace of originality and if it provides a distinguishable variation." *Id.* (internal citations and quotation marks omitted). In other words, a derivative work is usually sufficiently "original" to qualify for copyright protection if the "derivative work contains a 'nontrivial' variation from the preexisting work 'sufficient to render the derivative work distinguishable from [the] prior work in any meaningful manner.'" *Id.* (quoting *Nimmer on Copyright* § 3.03[A], at 3-10). As with compilations and architectural works, though, "the copyright in a derivative work is *thin* . . . ." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 521 (7th Cir. 2009) (emphasis added).

16

Rule Joy argues that Commonwealth's Architectural Drawings "are not a derivative work," Def.'s Resp. to Add'l Br. Order at 28, while Commonwealth believes that the plans "would likely be considered a derivative work,"[11] Pl.'s Resp. to Add'l Br. Order at 17.  There is simply no doubt that Commonwealth's Architectural Drawings are "based upon one or more preexisting works," as they take the design of the Hotel as it existed from the 1928 Marcellus Wright design and subsequent 1955, 1962, and 1978 renovations, and they adapt, transform, and modify those preexisting works into a "new" design that adds apartment living and retail space, while also restoring the Hotel generally to the 1928 Marcellus Wright look and feel.  Further, the variations in Commonwealth's Architectural Drawings from the preexisting works are largely distinguishable from the prior works. The Court notes, though, that the underlying 1928, 1955, 1962, and 1978 designs may enjoy little, if any, copyright protection.[12]  More importantly, whether Commonwealth's variations from the preexisting works are distinguishable *in a meaningful way* is a close question, even recognizing that only a "faint trace of originality" qualifies for copyright protection.  In fact, the very nature of the

---

[11]The Court notes that, as mentioned previously herein, Commonwealth's certificate of copyright registration included only the "[n]ew and revised architectural work" and explicitly excluded the "[p]reexisting architectural work," suggesting that the Architectural Drawings are registered as both an "architectural work" and a "derivative work."

[12]Only "[a]rchitectural works created on or after December 1, 1990" qualify for protection under § 102(a)(8). *Frank Betz Assocs., supra,* No. 3:06-0911, 2010 WL 1373268, slip op. at 2. Therefore, the pre-1990 designs cannot be "architectural works," and only the 1978 design could qualify as a "technical" drawing under the 1976 Copyright Act. The 1928, 1955, and 1962 designs would be protected only to the extent that such protection was recognized by law prior to January 1, 1978, and the Court is not aware if the owners of any possible copyright in the 1928, 1955, or 1962 designs complied with the pre-1978 copyright formalities such that copyright protection has been extended to today. If such protection does exist today, the Court is not aware of the owners of the older copyrighted works.

work at issue in this case constrains Commonwealth's opportunities for originality, as the Architectural Drawings are effectively a derivative, architectural work.[13]

Again, derivative works enjoy a thin layer of copyright protection, whereby only the original material contributed by the new author receives protection. Similarly, architectural works enjoy only a thin layer of copyright protection, whereby the sole protected expression is the overall form and the arrangement and composition of unprotected individual elements and features. Thus, protection for Commonwealth's Architectural Drawings may fall only on the original form and arrangement of individual elements in the Hotel that are distinguishable from the pre-existing Hotel design in a meaningful way. A thorough review of Commonwealth's Architectural Drawings reveals that much of the expression in the drawings is unprotected due to insufficient originality.

### (5) Constraints on Commonwealth's Opportunities for Protectable Expression

In addition to the inherent limitations on possible protectable expression posed by the derivative nature of Commonwealth's Architectural Drawings, the drawings are further constrained by the "merger doctrine" and its related considerations. Where an idea "can only be expressed in

---

[13]Of course, "derivative, architectural work" is not its own separate statutory category of copyrightable work. Yet, conceptually, a work may qualify "across multiple lines as different types of primary works of copyrightable authorship." 1-3 *Nimmer on Copyright* § 3.08 (Lexis 2010). Indeed, the statute intentionally and explicitly qualifies architectural drawings as both § 102(a)(5) "technical drawings" and § 102(a)(8) "architectural works." Similarly, a work that qualifies across multiple lines as different types of primary works of copyrightable authorship may also qualify as one or multiple "secondary types of copyrightable authorship," such as "derivative works." *Id.* According to Nimmer, the Court's analysis on how to proceed should be guided by "[c]ommon sense," as, "[a]lthough any work could be made to fit into multiple categories, the consequences should, in each instance, be limited to those that make sense for that category." *Id.* In the instant case, common sense suggests that Commonwealth's Architectural Plans are properly considered "technical drawings," "architectural works," and "derivative works." As explained herein, while the Court has adopted the Eleventh's Circuit's application of "compilation" analysis to "architectural works," the Court does not agree with Rule Joy that Commonwealth's Architectural Drawings are technically a "compilation" under the statute.

a very limited number of ways . . . it can properly be said that 'the idea merged with the expression.'" *Greenberg v. Town of Falmouth*, No. Civ. A. 04-11934-GAO, 2006 WL 297225, at *2 (D. Mass. Feb. 8, 2006) (citing *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 34-36 (1st Cir. 2001)). In such a case, "§ 102(b) excludes the expression from the Copyright Act." *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791 (5th Cir. 2002). Thus, Commonwealth cannot seek copyright protection for the expression of its ideas where there were only a limited number of available ways in which Commonwealth could have expressed the ideas in its Architectural Drawings. The merger doctrine constrains Commonwealth's Architectural Drawings in significant ways, as at least the following factors operate to limit in some way the opportunity for originality and available ways in which to express elements in Commonwealth's Architectural Drawings: (1) market demands, (2) building codes and manufacturers' clearance directives, (3) functional demands, (4) the existing building's physical characteristics, and (5) the goal of "restoring" the Hotel to the old Marcellus Wright design. The Court will address each constraint in turn.

### (i) Market Demands

"[Architectural] experts agree that some outside constraints, including market demands, dictate aspects of [architectural] plan designs." *Frank Betz Assocs., supra*, No. 3:06-0911, 2010 WL 1373268, at 4. Such market demands in the instant case might include the expectations and design tastes of the prospective consumers of the residential apartment and commercial retail space in the Hotel, particularly with respect to the chosen amenities and size and number of rooms in each space. *See id.* (When designing plans, architects may "consider[] the changing taste of the middle class and strive[] for a 'sweet spot where the majority of buyers are' in terms of house square footage and expectations concerning number of bedrooms and amenities.") The Court recognizes that market

demands do not "undermine protection for the plans as a whole" because "[t]here is no standard for [architectural] plans." *Id.* Nevertheless, the constraint placed on Commonwealth's opportunity for originality and creativity by market demands, however slight, is still relevant to the copyright inquiry, and any design choice dictated solely by market demands cannot be protected expression, as it would not be original to Commonwealth.

### (ii) Building Codes & Manufacturers' Clearance Directives

Courts also recognize that "[b]uilding codes constrain the ultimate design of a [building]." *Id.* In the case at bar, for example, City of Richmond building requirements dictate that "[t]he fire command center must be close to the front door and street[.]" Def.'s Mot. Summ. J. Joy Aff. ¶ 21. Additionally, Richmond's building codes bar designs containing dead-end corridors longer than twenty feet in length, so such corridors must encircle spaces, rather than dead-end into a wall. Def.'s Mot. Summ. J. Ex. 8 at 1. Relatedly, the manufacturers of certain equipment necessary to the operations of a building such as the Hotel require that the equipment be given specific clearances for servicing and maintenance. Def.'s Mot. Summ. J. Joy Aff. ¶ 21. Therefore, any decisions on arrangement and coordination made by Commonwealth that were dictated by the building code and manufacturers' clearance directives cannot be protected expression, as they would not be original to Commonwealth.

### (iii) Functional Demands

The legislative history makes clear that functionally-required design components do not receive copyright protection under § 102(a)(8), while "design elements [that] are not functionally required . . . [are] protectible without regard to physical or conceptual separability," as would be required under § 102(a)(5). H.R. Rep. No. 101-735, *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6951;

20

*see also Frank Betz Assocs., supra*, No. 3:06-0911, 2010 WL 1373268, at 3. The Court must also be mindful that "[f]unctional considerations may . . . determine only particular design elements," in which case "[p]rotection would be denied for the functionally determined elements, but would be available for the nonfunctional[ly] determined elements." *Id.* Thus, arrangement and coordination decisions made out of functional necessity will typically not be protected by copyright. The Court notes, however, that Congress envisioned that "[e]vidence that there is more than one method of obtaining a given functional result may be considered in evaluating . . . the scope of protection." (quoting H.R. Rep. No. 101-735). *Frank Betz Assocs., supra*, No. 3:06-0911, 2010 WL 1373268, at 5. Therefore, arrangement and coordination decisions in Commonwealth's Architectural Drawings that were dictated by functional considerations cannot be protected expression.

### (iv) Existing Building

The merger doctrine is particularly relevant given the fact that the Hotel in its general structure, exterior, and form already existed before Commonwealth was involved in the project in any way. An architectural "design may be limited, to some extent, by square footage and, likewise, the width and depth of the lot may influence a design." *Frank Betz Assocs., supra*, No. 3:06-0911, 2010 WL 1373268, at 4. The Hotel is a certain height, width, and depth, has a certain exterior facade, contains certain typical structural features like stairwells and elevator shafts, has existing functional components like plumbing and electrical wiring, has necessary control and safety areas, contains certain immovable load-bearing components, has access to certain streets at certain points, and so on. These aspects of the Hotel, individually and cumulatively, operate to constrain Commonwealth's selection, coordination, and arrangement of design features, and, in many instances, allow for only a very limited number of ways to implement different design features.

21

Thus, any selection, coordination, and arrangement decisions that were dictated solely by existing building conditions cannot be protected expression, as such expression is not original to Commonwealth and will often also have merged with the underlying design ideas themselves.

### (v) Restoration

Finally, a primary aim of the renovation project is to restore the Hotel to its original 1928 look and feel. Therefore, a number of selection, coordination, and arrangement decisions were made specifically to return the Hotel to a design created by Marcellus Wright, not Commonwealth. Even if certain arrangements are not carbon copy returns to the original architectural plans, these arrangements may still lack sufficient originality where elements are incorporated just because the original 1928 style of the Hotel suggests that they should be. Without question, any arrangement and composition of elements that are simply a return to the original 1928 design cannot be protected expression, as they are in no way original to Commonwealth.

### (6) Rule Joy's "Design of a Building" Argument Fails

Though not advanced in its motion for summary judgment, Rule Joy now argues that Commonwealth "does not own a valid copyright in its architectural drawings because they are not *the design of a building* and therefore do not qualify under the definition of 'architectural works'" under § 102(a)(8). Def.'s Resp. to Add'l Br. Order at 30 (emphasis added). Rule Joy believes that Commonwealth's Architectural Drawings do not depict "the design of a building," insisting, instead, that Commonwealth's design is "primarily of interior layouts for apartments and supporting spaces within a building." Def.'s Resp. to Add'l Br. Order at 7. In support of this new position, Rule Joy cites 37 C.F.R. § 202.11, the section of the Code of Federal Regulations that "prescribes rules pertaining to the registration of architectural works." 37 C.F.R. § 202.11(a). This regulation defines

22

the term "building" as "humanly habitable structures that are intended to be both permanent and stationary, such as houses and office buildings, and other permanent and stationary structures designed for human occupancy, including but not limited to churches, museums, gazebos, and garden pavilions." *Id.* § 202.11(b)(2). The definition excludes "[s]tructures other than buildings, such as bridges, cloverleafs, dams, walkways, tents, recreational vehicles, mobile homes, and boats." *Id.* § 202.11(d)(1). It also excludes "standard features," a term it defines as "[s]tandard configurations of spaces, and individual standard features, such as windows, doors, and other staple building components." *Id.* § 202.11(d)(2).

In arguing that Commonwealth's Architectural Drawings are not "the design of a building," Rule Joy also cites to *North Forest Dev., LLC v. Walden Avenue Realty Assocs., LLC*, 2009 WL 5959961, slip op. (W.D.N.Y. July 22, 2009), a case involving the alleged infringement of architectural drawings of certain interior office layouts. In the *North Forest* court's description of the factual background of the case, it noted that, "[a]lthough [the interior office layout designs] were initially submitted as 'architectural works' [to the Copyright Office for registration], the Copyright Office advised [the plaintiff] that they would not qualify for protection as 'architectural works' because they did not depict an entire building. Therefore, [the plaintiff] registered the works as 'technical drawings' instead." *North Forest, supra* 2009 WL 5959961, at *1 (internal citation omitted).

Rule Joy's reliance on *North Forest* is misplaced. First, Congress has explained that "interior architecture may be protected" under § 102(a)(8). H.R. Rep. No. 101-735, *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6949. Second, Rule Joy, though it describes Commonwealth's designs as being "primarily" interior layouts, admits that "C[ommonwealth]'s drawings depict an entire building," and

indeed they do. Def.'s Resp. to Add'l Br. Order at 7. Third, the Copyright Office's decision not to allow registration of the particular plans at issue in *North Forest* has no bearing on the Architectural Drawings in the case at bar that the Copyright Office *did* allow to be registered as an "architectural work." Finally, the discussion in *North Forest* of whether the interior office layouts could qualify as "architectural works" is not even dicta, as the *North Forest* court was simply providing the case's factual background and was not expressing any opinion of its own whatsoever. *North Forest* does not stand for the general proposition that architectural drawings that contain interior designs cannot receive copyright protection as "architectural works." Indeed, Commonwealth's Architectural Drawings contain designs of a humanly habitable structure that is both permanent and stationary. While the designs do not call for the demolition of the entire Hotel and building of a completely brand new structure, the designs are of multiple floors, interconnected in the overall layout of the building. In other words, the Architectural Drawings are "the designs of a building" such that original expression contained therein may potentially be protected by copyright under § 102(a)(8).

### (7) Defining the Copyright Interest Held in Commonwealth's Architectural Drawings

Rule Joy has the shifted burden of demonstrating that Commonwealth's registered Architectural Drawings are unworthy of copyright protection. To show that the Architectural Drawings do not deserve any copyright protection whatsoever, Rule Joy must establish that the drawings are not an original work of authorship fixed in a tangible medium of expression. It is uncontroverted that the drawings are "fixed in a tangible medium of expression." Further, the Court has determined that the drawings satisfy the definitional requirements of the work of authorship known as "architectural works" under 17 U.S.C. § 102(a)(8) such that the drawings are of "the

24

design of a building" under 17 U.S.C. § 101. Thus, to carry its burden, Rule Joy must demonstrate that the Architectural Drawings are not *original*. To be "original," the work in question must have been "independently created by the author," and it must "possess[ ] at least some minimal degree of creativity." *Darden, supra,* 488 F.3d at 286. There is no dispute that Commonwealth independently created the Architectural Drawings,[14] so the primary inquiry is whether the drawings possess the requisite minimal degree of creativity, recognizing that "the requisite level of creativity is extremely low," whereby "even a slight amount will suffice." *Feist, supra,* 499 U.S. at 345.

Commonwealth's Architectural Drawings are properly analyzed as both an "architectural work" and a "derivative work." Therefore, protection for Commonwealth's Architectural Drawings may fall only on the original form and arrangement of individual elements in the Hotel that are distinguishable from the pre-existing Hotel design in a meaningful way. As such, any copyright held in the drawings is necessarily thin. Commonwealth's copyright is made even more thin as it can properly be said that a number of Commonwealth's design ideas merged with the expression of those ideas, particularly where originality and available ways in which to express ideas were necessarily constrained by market demands, building codes and manufacturers' warranty directives, functional demands, the existing building's physical characteristics, and the goal of "restoring" the Hotel to the 1928 look and feel. Indeed, a thorough review of the Architectural Drawings reveals that much of Commonwealth's expression is unprotected due to these various considerations.

_____

[14]Of course, to the extent that the drawings precisely restored aspects of the original 1928 design, those particular design elements are not "independently created," but there is no suggestion that Commonwealth copied its entire design from some other source such that the drawings are not "independently created" for purposes of the originality inquiry.

25

Nevertheless, it cannot be said that Rule Joy has established that the Architectural Drawings are wholly undeserving of any copyright protection whatsoever. Commonwealth's Architectural Drawings are detailed representations of one of a number of ways in which to renovate a multi-level building by restoring the building to its original look and feel while also updating its design to accommodate modern goals such as the addition of retail space and conversion of hotel rooms to apartment units. Even recognizing that Commonwealth's Architectural Drawings constitute a thinly-protected work of authorship further constrained by a number of additional factors, it is properly considered one of the "vast majority of works" that "make the grade" for copyright protection. *Feist, supra*, 499 U.S. at 345. The drawings possess a creative spark, though humble in places and limited in others, and much of Commonwealth's original arrangement and coordination of features is distinguishable from the pre-existing architectural designs in a meaningful way. Rule Joy focused its arguments primarily on explaining why the portions of Commonwealth's drawings that Commonwealth claims Rule Joy incorporated into its own drawings are not deserving of copyright protection, and, indeed, Rule Joy has successfully shown that certain portions of the Architectural Drawings are undeserving of protection. Rule Joy has not, however, demonstrated that every single design choice – every single arrangement and coordination of design elements – in Commonwealth's drawings is unprotected. Even without the benefit of the shifted burden, it is properly said that Commonwealth's drawings contain protected expression, albeit thin and constrained. Such thin and constrained protection is copyright protection nonetheless, and any unauthorized copying of such protected expression would constitute copyright infringement.

26

**B. Unauthorized Copying of Protected Expression**

To succeed on its copyright infringement claim, Commonwealth must establish that Rule Joy engaged in unauthorized copying of the work protected by Commonwealth's valid copyright. *Nelson, supra*, 284 F.3d at 513. A plaintiff in a copyright infringement suit can prove copying either directly or indirectly. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001). Commonwealth argues that "there is significant direct evidence of copying," Pl.'s Mem. in Opp'n. to Mot. for Summ. J. at 2, or that there are at least genuine issues of material fact concerning direct proof of copying, Pl.'s Resp. to Add'l Br. Order at 19. Specifically, Commonwealth alleges that there is direct evidence that Rule Joy scanned Commonwealth's Architectural Drawings and converted them into electronic ".PDF" files. Pl.'s Resp. to Add'l Br. Order at 19. Rule Joy does not deny having converted the Architectural Drawings from paper form into .PDF form. Indeed, Rule Joy admits that it sent the Architectural Drawings to Diazo Printing, a professional scanning service, to "have PDF files made" of the drawings. Joy Dep. Tr. ¶ 78:23 - 79:1.

The fact that Rule Joy commissioned a professional scanning service to perform the electronic copying of Commonwealth's Architectural Drawings, as opposed to physically placing the documents in a scanner on its own, does not cut off exposure to copyright infringement liability. While "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another," the Supreme Court has explained that "[t]he absence of such express language in the copyright statute does not preclude the imposition of liability for copyright infringements on certain parties who have not themselves engaged in the infringing activity." *Sony, supra*, 464 U.S. at 434-35. In other words, though "[t]he human being who engages in reproduction, distribution, or other acts of 'copying' as defined by the Copyright Act is culpable as the direct infringer," courts also hold

27

liable "[t]hose who participate in the copyright infringement . . . even if they have not 'personally duplicated the designs' at issue. 3-12 *Nimmer on Copyright* § 12.04. A case is one "in which the imposition of vicarious [copyright] liability is manifestly just" when "the 'contributory' infringer was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."[15] *Sony, supra,* 464 U.S. at 437.

The Supreme Court in *Sony* did not hold Sony vicariously liable for the infringing activity of purchaser's of Sony's Betamax television recorders because "no employee of Sony . . . had either direct involvement with the allegedly infringing activity or direct contact with purchasers of Betamax who recorded copyrighted works off-the-air." *Id.* at 438. Further, "there was no evidence that any of the copies made by [the infringing purchasers] were influenced or encouraged by [Sony's] advertisements." *Id.* In the case at bar, Rule Joy was in a position to control the use of Commonwealth's copyrighted Architectural Drawings and not only authorized, but actually ordered the scanning of the drawings without Commonwealth's permission. Rule Joy's employee had direct involvement and direct contact with the scanning service, and the scanning service would never have copied Commonwealth's drawings but for Rule Joy's having provided the service with the drawings

---

[15]Nimmer draws a fine line between vicarious copyright liability and contributory copyright infringement that was not addressed by the Supreme Court in *Sony. See* 3-12 *Nimmer on Copyright* § 12.04. The vicarious liability line of cases requires that the defendant (1) possess "the right and ability to supervise the infringing conduct" and (2) have "an obvious and direct financial interest in the exploitation of copyrighted materials." *Id.* (citing cases). The contributory infringement line of cases holds liable a party "who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Id.* (citing cases). If Diazo's scanning of the drawings constituted an infringing act, Rule Joy would properly be held liable under either approach for secondary liability, and may even be primarily liable. *See Images Audio Visual Prods., Inc. v. Perini Bldg. Co., Inc.*, 91 F. Supp. 2d 1075, 1079-80 (E.D. Mich. 2000) ("Nor, plainly, can [d]efendant deny that it 'reproduce[d]' [p]laintiff's copyrighted photos within the meaning of § 106(1) of the Copyright Act" where defendant used "a copying service to make color photocopies of [p]laintiff's copyrighted works.").

for the sole purpose of having them scanned into electronic .PDF files. Thus, it would be manifestly just to find Rule Joy liable for copyright infringement if the scanning of the Architectural Drawings is an infringing act.

Rule Joy does not argue that the scanning of the Architectural Drawings does not constitute copyright infringement; it argues only that it did not incorporate these electronic .PDF copies, or any protected expression contained therein, in any way into its own architectural design for the Hotel. Rule Joy's argument fails, as the court need not even reach it. As noted previously herein, Congress has granted "exclusive rights" to an owner of copyrighted material "to reproduce the copyrighted work in copies or phonorecords." 17 U.S.C. § 106(1). "It is well-established that photocopying a copyrighted work without the owner's permission infringes the owner's right of reproduction." *Advance Magazine Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628, 637 (D. Md. 2006) (citing *Princeton Univ. v. Mich. Document Svcs.*, 99 F.3d 1381 (6th Cir. 1996), *cert. denied*, 520 U.S. 1156 (1997)). Although Rule Joy (through Diazo) used a scanner to create a digital copy of a work, rather than a photocopier to print a physical copy, "the methods of copying are equivalent and they are both infringing." *Id.* Indeed, "[a] digital copy made without the owner's permission is copyright infringement." *Id.* (citing generally *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)).

Again, Rule Joy failed to carry its burden of showing that Commonwealth's Architectural Drawings are wholly undeserving of any copyright protection whatsoever. While the protected expression in the Architectural Drawings is extremely thin and limited, the protection exists for certain aspects of Commonwealth's drawings. Drawing all reasonable inferences in favor of Commonwealth for the purposes of Rule Joy's motion for summary judgment, the Court must

assume that Rule Joy did in fact make wholesale, verbatim .PDF copies of Commonwealth's copyrighted designs.[16] Therefore, under the facts alleged by Commonwealth, direct evidence exists that Rule Joy infringed Commonwealth's exclusive right to reproduce its Architectural Drawings by scanning the drawings and converting them into .PDF files.  At the very least, Commonwealth's allegation creates an issue of material fact that precludes summary judgment, as a reasonable jury could return a verdict for Commonwealth, the nonmoving party.  Thus, the Court need not reach the issue of whether Rule Joy incorporated any of Commonwealth's protected expression into its own drawings, and the Court will not address the Plaintiff's allegations of indirect evidence of infringement.

### IV. Conclusion

For the foregoing reasons, the Court will deny Rule Joy's motion for summary judgment. An appropriate Order will issue.

June 3, 2010
DATE

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

---

[16]Rule Joy returned the originals of the Architectural Drawings to Commonwealth in March 2009, and nothing presently before the Court indicates that Rule Joy had made a duplicate hard copy set before then.  Presumably, therefore, the unauthorized copying and/or scanning of the drawings occurred prior to the return of the originals.  As Commonwealth did not receive an effective copyright registration until May 2009, it appears that the scanning of the drawings predated Commonwealth's effective registration.  While this fact would not affect the burden-shift under 17 U.S.C. § 410(c) because Commonwealth's registration was still made effective within five years of the first publication of the drawings, it appears that it might affect any recoverable damages, as "[t]he owner of a copyright registration is entitled to statutory damages, enhanced damages for willful infringement or attorneys' fees only if registration predates the date of first infringement." *Custom Direct, LLC v. WynWyn, Inc.*, No. RDB-09-2348, 2010 WL 1794248, at *2 (D. Md. May 5, 2010) (citing 17 U.S.C. § 412).