IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

THE HARVESTER, INC., d/b/a Commonwealth Architects,

Plaintiff,

v.

Civil Action Number 3:09cv358

RULE JOY TRAMMELL + RUBIO, LLC,

Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the following motions: (1) the Defendant's ("Rule Joy") motion to strike the Plaintiff's ("Commonwealth") principal expert witness, James Finch ("Finch") (Docket No. 66), (2) Commonwealth's motion in limine to exclude certain expert testimony of Rule Joy's expert witnesses, Davis Buckley ("Buckley") and Dan Joy ("Joy") (Docket No. 68), and (3) Rule Joy's motion to strike Commonwealth's rebuttal expert disclosures of Peter Barden ("Barden"), Charles M. Allen ("Allen"), and Robert S. Mills ("Mills") (Docket No. 67). The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and argument would not aid in the decisional process. For the reasons stated herein, the Court will (1) deny Rule Joy's motion to strike Finch, (2) grant in part and deny in part Commonwealth's motion to exclude testimony of Buckley, (3) grant Commonwealth's motion to exclude testimony of Joy, (4) deny Rule Joy's motion to strike Barden, (5) grant Rule Joy's motion to strike Allen, and (6) grant Rule Joy's motion to strike Mills.

# I. Legal Standard

Determinations on the admissibility of expert witness testimony are made pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Michael*, 26 U.S. 137 (1999). Rule 702 provides that an individual who will testify to scientific, technical, or other specialized knowledge must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Fourth Circuit has held that "the use of the disjunctive indicates that a witness may be qualified as an expert on any one of the five listed grounds." *Friendship Heights Assocs. v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154, 1159 (4th Cir. 1986). "Where the expert's qualifications are challenged, the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (internal quotations omitted).

Under *Daubert*, when a court is "[f]aced with a proffer of expert scientific testimony," the court "must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert, supra*, 509 U.S. at 592. In determining whether the "scientific knowledge" prong is satisfied, a court may consider the following factors: (1) ability to test the theory or technique; (2) peer review and publication; (3) error rate; and (4) degree of acceptance within the relevant scientific community. *Id.* at 593-94. An additional factor to consider is whether the expert testimony was prepared solely for purposes of litigation, or whether it flowed naturally from the expert's research or technical work. *See Wehling v. Sandoz Pharms. Corp.*, 162 F.3d 1158, table op. at *3 (4th Cir. 1998)

("Another significant fact weighing against admitting the testimony is where, as here, the expert developed his opinions expressly for the purposes of testifying."); *Daubert, supra*, 43 F.3d at 1317-18 ("If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'"). This list of factors, however, is not exclusive, and "the trial judge must have considerable leeway in determining whether particular expert testimony is reliable." *Kumho Tire, supra*, 526 U.S. at 152. The Fourth Circuit also recognizes the Supreme Court's admonition that "'the test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting *Kumho Tire, supra*, 526 U.S. at 141-42).

## II. Rule Joy's Motion to Strike Commonwealth's Expert James Finch

Rule Joy moves the Court to strike James Finch who has been designated by Commonwealth as an expert witness on the issues of copying and license evaluation. Finch, who has 30 years of architectural experience in the United States, the Middle East, and the United Kingdom, is prepared to testify that Rule Joy's drawings are not only similar to Commonwealth's drawings, but were actually copied from Commonwealth's drawings. Finch is also prepared to testify that a license for the use of Commonwealth's drawings is worth $600,154.46. Rule Joy requests an order striking Finch and precluding his testimony at trial on the issues of copying and license evaluation on the grounds that Finch's opinions fail to possess the requisite scientific validity needed to establish evidentiary reliability. Rule Joy further moves the Court for an Order striking Finch's Supplemental

Expert Witness Report ("Supplemental Report") on the same grounds and further on the grounds that the supplementation was not timely pursuant to Local Rule of Civil Procedure 26(D)(2).

A. Copying

In his deposition, Finch testified that he reached his opinion that Rule Joy copied protected elements from Commonwealth's drawings simply by observing the subject documents generally and then in more detail. He acknowledged that he used no other methodology or testing to arrive at his opinions; did not use any computer analysis to evaluate the drawings; has never employed the method used to determine whether drawings had been copied; has no special training or experience with determining whether drawings have been copied; is not aware of any literature addressing the issue of evaluating whether drawings were copied; and does not contend that there was wholesale copying of the drawings but, rather, that certain elements were copied. Finch was unable to provide a specific percentage of similarities that warranted the opinion that the drawings were copied and admitted that "he [is] an expert on copying but not an expert in the process of copying." While Finch suggested that his method was "a fairly standard way" of reviewing drawings, he was not aware of any other architect using the method to determine whether drawings were actually copied. Further, he did not know whether his method had ever been peer reviewed by other architects and was not aware of any standards which control the method he used; however, he was of the opinion that his method enjoyed general acceptance within the community of architects. Rule Joy argues that Finch's opinions lack the requisite scientific basis and validity needed to establish evidentiary reliability under Federal Rule of Evidence 702, *Daubert*, and *Kumho Tire*.[1]

---

[1] Rule Joy also argues that, as Finch is not licensed to practice architecture in the Commonwealth of Virginia, he is not legally permitted to offer his opinions in this case. This argument is wholly without merit. Rule Joy cites the Virginia Code that prohibits any person from

4

Just as "law enforcement officers with extensive drug experience are qualified to give expert testimony on the meaning of drug-related code words," *Wilson, supra*, 484 F.3d at 275, and just as "forensic photographic investigators with extensive child pornography experience are qualified to give expert testimony as to whether images depict real children," *Bynum, supra*, 604 F.3d at 167, a licensed architect with extensive experience reviewing architectural drawings is qualified to give expert testimony as to whether two different sets of architectural drawings contain meaningful architectural similarities. Rule Joy's claim that Finch's method has not been tested, or subject to peer review and publication, and does not have a known rate of error, "also is true of drug-code testimony" and forensic child pornography testimony. *Bynum, supra*, 604 F.3d at 167. The Fourth Circuit has acknowledged that, although "[e]xperiential expert testimony . . . does not rely on anything like a scientific method," such testimony is admissible under Rule 702 so long as an experiential witness "explain[s] how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Id.* (internal quotation marks and citations omitted).

Here, Finch has explained that his 30 years of architectural experience, a significant portion of which involved reviewing design documents and developing processes for design document review, is reliably applied to the facts in the case at bar. This experience provides Finch with the

---

practicing architecture in Virginia without being licensed in Virginia and makes unlicensed practice a criminal offense. *See* Va. Code §§ 54.1-46 & 54.1-111. Rule Joy argues that, in offering his opinions in this case, Finch has practiced, and is practicing, architecture in Virginia without a license. The Virginia Code, however, does not have the far-reaching scope that Rule Joy claims. Finch's testimony about the similarity of the Rule Joy drawings to the Commonwealth drawings is simply not the "practice of architecture" as that term is used in the Virginia licensing statute. Further, the Virginia Code also allows an exception for unlicensed architects when they are working "as an employee under a licensed architect," and, according to Commonwealth, Finch works under Lori Garret, an architect licensed in Virginia. Accordingly, Rule Joy's argument fails.

basis for knowledge, skill, or experience exceeding that of the average juror. *United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006). Finch used his experience to develop a proper methodology called for by the question presented to him, and he used a detailed, systematic approach wherein he compared drawings to determine similarities, and once he discovered similarities, he compared them in more detail "to find out why they were similar." He did not use a computer during the review "because it would not have helped." Indeed, the Court is not aware of any method other than the method used by Finch for reviewing architectural drawings for meaningful architectural similarities. Thus, the Court finds that Finch's method of review satisfies the requirements of Rule 702, *Daubert*, and *Kumho Tire*, and the Court will deny Rule Joy's motion to strike Finch's testimony as to alleged copying.[2]

### B. License Evaluation

Rule Joy moves the Court to strike Finch's expert opinion on the issue of evaluating a license agreement for one firm to use another firm's copyrighted drawings. Finch's original report and his deposition testimony asserted that, in his opinion, the value of the license for the use of Commonwealth's drawings was $1,023,963.09. Finch arrived at this figure by totaling Commonwealth's billings for producing its Instruments of Service, less Commonwealth's profit on those billings, less the cost Rule Joy and its consultants would incur to perform a due-diligence check of the Commonwealth documents. He explained that he used this formula based on his

---

[2]In the instant motion, Rule Joy challenges only the scientific validity and reliability of Finch's opinion as to alleged copying. Rule Joy does not suggest that expert testimony as to substantial similarity, as a general matter, is improper. Indeed, Rule Joy offers its own expert testimony as to substantial similarity, or, rather, the alleged lack thereof. Therefore, as the issue is not presently before the Court, the Court will withhold ruling on the scope of Finch's permissible testimony as to the allegedly infringing similarities between the drawings.

experience in assessing the cost of an architectural firm providing instruments of service. Finch acknowledged, though, that "he does not purport to be an expert solely for the evaluation of licenses," basing his expertise in license evaluation, instead, "on similar-related work [experience] . . . ." Finch Dep. Tr. at 188-89. He further acknowledged that a license fee is built into the cost of producing architectural services and that the license fee is not added to the total cost of architectural services.

A significant portion of Finch's original claimed value for Commonwealth's drawings, however, was attributable to the cost of producing documents for John Camper ("Camper") in 2004 for a prior proposed conversion of the John Marshall Hotel, and Finch was unable to testify at his deposition to what extent, if any, the prior work for Camper was involved in the preparation of the drawings involved in this litigation. Following his deposition, Finch specifically reviewed all of the Camper drawings "to determine if [those drawings] should be taken into consideration in determining a value for the use of Commonwealth's copyrighted design material." Finch determined that he was incorrect to include the entire value of the Camper set of drawings in his license valuation, and revised the opinion to exclude from the license value a portion of the total cost of producing the Camper drawings. This revised opinion, issued on March 19, 2010, was made available in a Supplemental Report and values the license at $600,154.46.

In his Supplemental Report, Finch's valuation formula remained unchanged, but for the partial exclusion of the Camper amounts. As with Finch's initial report, Rule Joy does not believe there is any authority or basis for the evaluation set forth in the Supplemental Report. Additionally, Rule Joy contends that the report was filed in excess of the time permitted by Local Rule Civil Rule 26(D)(2) and should be stricken and not allowed to be the subject of any opinions rendered by Finch.

The parties failed to enter into any written agreement related to expert discovery matters, so they are, in fact, governed solely by Rule 26 in this case. The Court's second pretrial Order mandated that discovery must be concluded by March 23, 2010. Local Rule 26(D)(2) mandates that plaintiffs must make their expert disclosures "not later than sixty (60) days before . . . the date set for completion of discovery." Given that the supplemental report was filed on March 19, four days before completion of discovery, Rule Joy believes that it should be stricken and that Finch should be limited to the opinions set forth in his initial expert disclosure served on November 13, 2009.

Rule Joy's argument is misplaced. Under Federal Rule of Civil Procedure 26(a)(2)(D), parties are required to supplement an expert witness report if "a party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Here, supplementation was necessary to correct Finch's calculation error, and the corrective information – that is, Finch's amended license valuation – had not yet been made known to Rule Joy during the discovery process. The Supplemental Report is not itself a new expert disclosure as must be disclosed sixty days before the end of discovery under Local Rule 26(D)(2). The Federal Rules of Civil Procedure provide that supplemental expert witness reports must be submitted 30 days prior to the date of trial. Fed. R. Civ. P. 26(a)(3), 26(e)(2). Trial was originally scheduled for this matter on April 20, 2010, and 30 days prior to that date was Sunday, March 21, 2010, thus making Monday, March 22, 2010 the supplementation deadline. The trial date has since been continued to September 13, 2010, but even operating under the original April 20, 2010 trial date, the Supplemental Report was served on Rule Joy on March 19, 2010, two days before the March 21 deadline. Accordingly,

the Supplemental Report was submitted timely, and the Court will deny Rule Joy's request to exclude it as untimely.

Further, Finch has 30 years of relevant architectural experience. A significant portion of that experience involved valuating document design services for the purpose of creating fee proposals. This experience provides Finch with the basis for knowledge, skill, or experience exceeding that of the average juror. *Perkins, supra*, 470 F.3d at 155. Finch used his experience to develop a proper methodology called for by the question presented to him. Thus, Finch reliably applied his experience to the facts in the case at bar, and the Court finds that Finch is qualified as an expert under Rule 702, and his testimony, as amended in his Supplemental Report, related to the valuation of a license for Commonwealth's architectural drawings qualifies as "scientific knowledge" that will assist the trier of fact to understand or determine a fact in issue such that it comports with the Supreme Court's directives in *Daubert* and *Kumho Tire*. The testimony is sufficiently reliable, and the Court will deny Rule Joy's motion to strike it.

### III. Commonwealth's Motion in Limine

Commonwealth moves the Court to exclude Rule Joy's designated experts Davis Buckley and Dan Joy. Commonwealth challenges portions of Buckley's expert testimony related to (1) Buckley's interpretation of the Copyright Act and (2) Buckley's opinion that Rule Joy's drawings do not contain meaningful, protected architectural similarities to Commonwealth's drawings. Commonwealth challenges Joy as an improper sur-rebuttal expert not authorized by either the Federal or the Local Rules of Civil Procedure. The Court will address each argument in turn.

## A. Davis Buckley

### (1) Interpretation of the Copyright Act

Buckley's report sets out his opinions about the scope of protection for architectural works under the Copyright Act and then applies these opinions to the drawings at issue in this case. In one section, Buckley opines purely on his interpretation of the statutory definition of an "architectural work" as found in 17 U.S.C. §§ 101 and 102(a)(8). Buckley states that he does not believe that Commonwealth's drawings rise to the level of the "design of a building" as contemplated by the text of § 102(a)(8). As such, Buckley believes that the plans prepared by Commonwealth are not protectable under 17 U.S.C. § 102(a)(8) as a matter of law. Buckley's interpretation and application of the statute, however, improperly "invade[s] the judge's province of instructing the jury" on the controlling law. *See United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002).

Further, whether or not Commonwealth's drawings constitute "the design of a building," was a question of law before the Court on Rule Joy's motion for summary judgment. In the Court's Memorandum Opinion of June 3, 2010 (Docket No. 79), the Court ruled that Commonwealth's "[a]rchitectural [d]rawings are 'the designs of a building' such that original expression contained therein may potentially be protected by copyright under § 102(a)(8)." Mem. Op. at 24. The Court further held that "Commonwealth's drawings contain protected expression, albeit thin and constrained." Mem. Op. at 26. These issues, therefore, are resolved as a matter of law in this case, and expert witness testimony as to the proper way to interpret § 102(a)(8) has no place at trial. Accordingly, the Court will grant Commonwealth's motion to exclude Buckley's testimony

interpreting the Copyright Act and concluding that Commonwealth's drawings are not "the design of a building."[3]

### (2) Copying

Buckley will testify that any similarities between Commonwealth's drawings and Rule Joy's drawings are not actionable as copyright infringement because the alleged similarities relate only to unprotected design elements. Buckley's opinion is based, in part, on his assumption that what Rule Joy refers to as the Department of Housing and Urban Development ("HUD") "program" – that is the specifications as to the desired number and type of apartment units and retail space intended for inclusion in the renovation designs – was developed independently by HUD, not Commonwealth. When asked in his deposition upon what he based this assumption, Buckley said "I just know that." Commonwealth contends that Commonwealth developed the program at issue, not HUD. Commonwealth faults Buckley for "assuming" that the program was developed by HUD exclusive of Commonwealth's involvement. Commonwealth believes that Buckley's deposition testimony reveals that he does not know whether his assumption about the HUD "program" is correct. Buckley admitted that he did not ask counsel for Rule Joy where the HUD "program" requirements came from. Therefore, Commonwealth argues that Buckley's casual method of acquiring, or failing to acquire, critical knowledge means that his comparison opinions are not based

---

[3] The parties are reminded that the Court's legal conclusions are controlling in this case. As such, all expert witness testimony must comport with the Court's June 3, 2010 ruling, and any expert testimony analyzing the relevant facts must be consistent with the Court's legal determinations. The Court will exclude from trial any expert testimony or written opinion based on an improper legal foundation or that exceeds the proper scope of testimony needed to assist the trier of fact to understand or determine a fact in issue. The parties should be mindful of the well-established principle that "[e]xpert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." *Barile, supra*, 286 F.3d at 760.

on sufficient facts and that his assumption-based testimony would not assist the trier of fact to understand the evidence or to determine any fact in issue.

Rule Joy argues, and the Court agrees, that any "insufficiency" in Buckley's assumption should be the subject of his cross-examination, not his exclusion. Who created the so-called "program" is a fact issue for the jury. Further, as it is Rule Joy's position that HUD developed the program independently, under Rule Joy's version of the facts, Buckley's "assumptions" would be factually correct. Additionally, Buckley's report includes a factual point-by-point refutation of each of Commonwealth's forty-four claims of infringement, evidencing that his opinion is not based solely on his assumption that the HUD program was unrelated to Commonwealth's original design. The Court finds that Buckley is qualified to render expert opinions related to substantial similarity and that his "scientific knowledge" would properly assist the trier of fact. Accordingly, the Court will deny Commonwealth's motion to exclude Buckley's testimony with respect to his opinion on the lack of meaningful design similarities.[4]

### B. Dan Joy

Commonwealth designated one of its own architects, Peter Barden, as a rebuttal expert to dispute the opinion of Rule Joy's principal expert, Davis Buckley, with respect to the availability of alternative designs for the adaptive reuse of the John Marshall Hotel. Rule Joy designated Dan Joy solely as an expert "in response to the rebuttal expert designation of [Barden]." Commonwealth

---

[4]In the instant motion, Commonwealth challenges Buckley's opinion as to copying only on grounds that the opinion is based on an improper reading of relevant law and insufficient facts. Commonwealth does not suggest that expert testimony as to substantial similarity, as a general matter, is improper. Indeed, Commonwealth offers its own expert testimony as to substantial similarity. Therefore, as the issue is not presently before the Court, the Court will withhold ruling on the scope of Buckley's permissible testimony as to the absence of infringing similarities between the drawings.

argues, therefore, that Joy was impermissibly designated as a sur-rebuttal expert. In other words, Commonwealth believes that Rule Joy is improperly attempting to rebut Commonwealth's rebuttal. Local Civil Rule 26(D)(2) provides that a plaintiff is to first disclose its expert witness(es), then the defendant is to disclose its expert witness(es), and then the plaintiff may disclose a rebuttal expert witness or witnesses to contradict or rebut the defendant's disclosure. Indeed, the Local Rules do not allow for any further expert disclosures other than those specified.

Joy's proposed expert testimony would focus entirely on alternate design issues. Rule Joy's principal expert, Buckley, will testify that Commonwealth's entire design was solely dictated by external factors, such as the existing building and HUD requirements, indicating that no alternatives existed. Commonwealth's rebuttal expert, Barden, will dispute Buckley's opinion and assert that Commonwealth's design was not completely dictated by external factors, but was instead one of a number of possible designs. Rule Joy does not enjoy the right to designate a sur-rebuttal expert to Barden's rebuttal expert opinion without leave of court, and even if such a right existed, the Court would exclude the testimony as duplicative of Buckley's testimony. The Buckley-Barden exchange of contrasting opinions does not introduce any new material such that a sur-rebuttal from Joy is necessary or appropriate. Accordingly, the Court will grant Commonwealth's motion to exclude Joy's testimony.

## IV. Rule Joy's Motion to Strike Commonwealth's Rebuttal Expert Disclosures

Rule Joy moves the Court to strike Commonwealth's rebuttal expert disclosures identifying Peter Barden, AIA, Charles Allen, J.D., and Robert Mills, AIA on the grounds that the disclosures do not identify rebuttal testimony and otherwise do not identify admissible opinions.

### A. Peter Barden, AIA

As previously explained herein, Commonwealth offered Peter Barden to rebut the opinions of Rule Joy's principal expert, Davis Buckley, with respect to the availability of alternative designs. Buckley has opined that "the entire design of the floor plates and demising walls is solely dictated by the existing building envelope constraints, HUD requirements and client programming." Barden will dispute Buckley's opinion that Commonwealth and Rule Joy both designed the John Marshall Hotel in the only possible way.

Rule Joy argues that Buckley's expert report did not in any way address alternative design, so the opinions expressed by Barden's disclosure, by definition, cannot be rebuttal opinions. Rule Joy believes that Barden is not a rebuttal expert to Buckley, but merely a second expert to offer duplicative testimony on an issue it believes will be fully addressed by Commonwealth's primary expert, James Finch, whose opinion, Rule Joy contends, rests, in part, on the position that there were various alternative designs available to Commonwealth.

Rule Joy's argument is misplaced. Buckley's opinion includes an emphasis on his belief that Commonwealth's design was nothing more than the dictated response that followed from a number of external factors. In other words, Buckley asserts that no alternative designs existed. Therefore, Barden's opinion that alternate architectural designs were available and feasible properly rebuts Buckley's assertions that they were not available or feasible. Further, Barden's opinion is not impermissibly duplicative of Finch's opinion. Barden's opinion includes his belief that Commonwealth's plan is original and that alternate designs are feasible, while Finch's relevant testimony focuses on a comparison of the two sets of drawings and a belief that Rule Joy copied Commonwealth's designs. Finch's testimony does not rest heavily on the existence of available

alternatives as would be required to rebut Buckley's testimony that no alternatives existed. Accordingly, the Court will deny Rule Joy's motion to strike Barden as a rebuttal expert.

### B. Charles M. Allen, J.D.

Charles Allen was disclosed as a rebuttal expert by Commonwealth for the purpose of rendering "a rebuttal opinion in light of the assertions in [Buckley's Report] . . . that the plans prepared by [Commonwealth] . . . are not protectable under 17 U.S.C. § 102(a)(8) [as 'architectural works']." In his rebuttal report, Allen opines that "the Commonwealth plans *are* protectable under 17 U.S.C. § 102(a)(8) as an architectural work, albeit as a derivative work." (emphasis added).

The Court will grant Rule Joy's motion to strike Allen as an expert for two reasons. First, Allen's opinions concern primarily the interpretation of a statute, a matter not properly left to an expert witness, but rather to the Court. As explained previously herein, the Court's legal conclusions in its June 3, 2010 Opinion are controlling on this issue, and expert testimony on the issue improperly "invade[s] the judge's province of instructing the jury" on the controlling law. *See Barile, supra,* 286 F.3d at 760. Second, Commonwealth designated Allen solely to rebut portions of Buckley's testimony that the Court has already decided to exclude, as previously discussed herein. As such, no opportunity to rebut Buckley's testimony exists for Allen. Accordingly, the Court will grant Rule Joy's motion to strike Allen.

### C. Robert S. Mills, AIA

Commonwealth designated Robert Mills as a possible expert witness in rebuttal to Rule Joy's designation of Dan Joy. Thus, Mills is offered by Commonwealth to rebut Joy who is offered by Rule Joy to rebut Barden who is offered by Commonwealth to rebut Buckley, all with respect to the availability of alternative designs. As previously explained herein, the Court has ruled that Barden's

15

rebuttal testimony as to alternative design is admissible. The Court has also ruled that Joy's sur-rebuttal testimony is not admissible. Therefore, no opportunity to rebut Joy's testimony exists for Allen. Accordingly, the Court will grant Rule Joy's motion to strike Mills.

## V. Conclusion

For the foregoing reasons, the Court will (1) deny Rule Joy's motion to strike Finch, (2) grant in part and deny in part Commonwealth's motion to exclude testimony of Buckley, (3) grant Commonwealth's motion to exclude testimony of Joy, (4) deny Rule Joy's motion to strike Barden, (5) grant Rule Joy's motion to strike Allen, and (6) grant Rule Joy's motion to strike Mills. An appropriate Order will issue.

/s/
Henry E. Hudson
United States District Judge

Date: July 1, 2010
Richmond, VA